Good morning, Your Honors. May it please the Court. I'm James Fredericks, appearing on behalf of the United States. This case is about non-privileged documents, mostly pre-existing corporate records, subpoenaed by a federal grand jury investigating price fixing in a particular industry. The documents are in the possession, custody, and control of the four subpoenaed law firms in the Northern District of California, where they are being used to prosecute and defend private class action lawsuits alleging price fixing in the same industry. Three defense firms moved to quash the subpoenas, and they are the appellees here. These firms got the documents from their foreign-located corporate clients and produced them to the four subpoenaed law firms and others as part of discovering the private lawsuits. When the four companies sent their documents to their American lawyers, they knew they were under investigation. They knew the grand jury was investigating this industry for price fixing. They knew the grand jury had previously subpoenaed their U.S. affiliates and subsidiaries for the same class of documents. They knew the grand jury stood ready to issue more subpoenas, and they knew the protective order would not withstand grand jury subpoenas. The district court, while its reasoning is not entirely clear, apparently quashed the subpoenas because they used to be outside the country, solely in the possession of foreign companies. They were only brought into the country as a result of the civil action, civil discovery, and out of what it deemed a concern about the potential for abuse in future cases. Under this ruling, private plaintiffs can use the documents to prosecute their private disputes. Civil defendants can use them to defend. The prosecutors can inspect them. But the grand jurors, the persons charged with investigating violations of federal law, criminal law, can't see them. They can't use them with witnesses in the grand jury to refresh their recollection, to confront them, to impeach them. And additionally, under this ruling, allowing the deponents are essentially allowed in their depositions in civil action to commit perjury with impunity,    And the grand jurors can use them to investigate and, in effect, immunizing their testimony by denying the grand jury the deposition and transgression. Yes. What should the foreign companies have done, or how should the lawyers have advised their clients with regard to these documents? They should have. I don't know what they advised. They wanted to avoid this situation. They could have kept the documents outside the country. So they should have said, okay, produce those documents in Korea or Japan. Pardon me? So what they should have told their clients, according to the government, I guess, and what they wanted to avoid being in this situation, they should have told or advised their clients, well, let's produce these documents. Let's make these documents available in Korea or wherever the country is, Japan or whatever it might be. Right? So everybody goes to the foreign country. They made offers like that to the private plaintiffs to let them review the documents outside the United States. And they could have pursued that action. And what they did do is ask the court in the civil action to stay discovery until the criminal investigation was over. And the court said no. They could have refused and appealed that ruling, claiming it's an abuse of discretion. Did the district court order that those documents be produced in the United States? Or adhered to the United States? Right. That's right. They ordered them to produce them to the plaintiffs. In the United States. I think that was the understanding of the ruling. But did the rule say produce those documents at the law offices of White and Case in San Francisco? They did not have those words, that's for sure. But the court's ruling in October said stop delaying, produce the documents that you've collected overseas to the plaintiffs. Presumably they could have made some kind of arrangement, I guess. I don't think the district court contemplated allowing everything in the civil action to occur outside the United States. They had to bring the documents here. Or they had to defy the order and seek relief for their request for a stay. Let me ask you this. So when the plaintiffs, I guess, served their request for production of documents, could they have said produce those documents in Korea or produce them in Japan? I suppose they could have reached some kind of agreement like that. Ultimately, that doesn't do much good to the private plaintiffs because they have to use the documents in the litigation here in the United States. They're ultimately going to use, they'll want to use those documents, for example, to maybe support a motion for summary judgment, oppose a motion for summary judgment. Right. The case ever goes to trial. You know, these cases rarely, you know, when's the last time one of these cases went to trial? Civil case. There are cases that go to trial. This is a big one. We'll see what happens. But when the motions for summary judgment are dealt with, when the trial is dealt with, in fact, even when the motions to certify a class are dealt with, these documents are going to be used. It's just not workable to keep them outside the United States from the civil actions perspective. That's not our, the government's point. We're not going to try to meddle with how the district court handles its civil action. Our point is when there are documents here in the possession of people that control them, that the court has jurisdiction over, that's the measure of the subpoena power. And here, that should have been the end of the inquiry. The firms have the documents. The court has jurisdiction over the firms. So is it your position that our opinion in, was it MESRV? Is it MESRV? MESRV, yes. MESRV? I called last week. I think they say MESRV. MESRV. Is that sort of, in your view, control the outcome here? I think that's right. It essentially says the interest in facilitating the private, the resolution of private disputes in the civil action is categorically outweighed by the interest, the public interest, in a powerful grand jury conducting an effective and expeditious investigation of criminal wrongdoing. The MESRV decision, I think we've talked about it in length in our brief, so I'd like to talk about a couple others. I think the same lesson that MESRV teaches in the Fourth and Eleventh Circuit decisions on which MESRV bases its reasoning, that is that things produced in civil discovery, including things that are only available because of the civil discovery, like depositions, like interrogatory answers, are still available, can be used in a criminal investigation in a criminal case. I'd like to talk about another Ninth Circuit decision, the Unruh decision, and the Supreme Court's Cordell decision. They essentially teach the same lesson. These are cases where the government had brought its own civil action and engaged in civil discovery, and the Court said that things produced in civil discovery, in those cases, a deposition transcript and interrogatory answers, respectively, can be used in criminal investigations and prosecutions. The touchstone in those cases is whether the civil discovery is being sought in bad faith, that is, whether the discovery devices were being used solely to develop evidence for the criminal case rather than to advance the civil case. Absent that kind of bad faith abuse, nothing is improper about the fruits of civil discovery being used to advance a criminal investigation or prosecution. Here, the district court specifically found that there had been no abuse or harassment, nothing in the record to suggest that the Department of Justice is using the civil discovery as a stalking horse for the grand jury investigation. It's quite plain that the plaintiffs were not engaging in this discovery to benefit the United States' criminal investigation, let alone solely to investigate it. Still, the Court quashed the subpoenas concerned about the potential for abuse in other cases. But this Court's decision in UNRRA and the Supreme Court's decision in Cordell permitted the use of civil discovery's fruits where there was no abuse. The reasoning was the potential for abuse in some future case didn't mean it couldn't be permitted where there was no abuse. The same principle should apply here. If anything, those cases where the government is actually the civil plaintiff engaging in the discovery have, I would admit, a greater potential for abuse because it's the same person writing the interrogatory, it's the same person conducting the deposition, than a case like this where the private plaintiffs are the ones engaging in the use of the civil discovery devices. There's no evidence in this case that the government controlled or influenced what the plaintiffs sought. It's certainly not fair to treat them as proxies for the United States here. The bottom line is that pretending that the documents are still abroad, are still solely possessed by the foreign companies, defies reality. It contravenes the reasoning in holding a misserve, in these cases I just discussed, UNRRA and Cordell. It essentially converts an immunity that the courts don't have the authority to confer. It puts the interest in facilitating the resolution of the private civil action over the public's interest in the grand jury's expeditious and effective investigation of crime. And it creates, ultimately, an unworkable situation. When the fruits of civil discovery are used during the civil actions public hearings, like we discussed, Judge Paez, at the motion stage of summary judgment, class certification, and eventually at a trial, do we still pretend they're not here? Do we keep the FBI out of the courtrooms? Do we not let them look at a public file in a public trial? That's just not a workable situation. At the end of the day, the documents at issue are in the United States. They are under the control of the subpoenaed U.S. law firms inside the district court's jurisdiction. There's no good reason to blind the grand jury to relevant evidence. Given the state of this investigation and the delay resulting from the quashel in this subsequent appeal, we ask the court to decide this case quickly, to reverse the judgment of the district court, and to remain with instructions to order the prompt production of the documents. If there are no further questions, I'd like to save the rest of my time for rebuttal. That's fine. Thank you. May it please the Court, my name is Christopher Curran of the firm White and Case, representing the Toshiba entities. With me at counsel's table is Mr. Kirk Jenkins, who represents the AUO entities, also a recipient of the subpoenas, as well as my colleague, John Chung. Federal Rule 17, Federal Rule of Criminal Procedure 17, authorizes a district court to quash a grand jury subpoena if compliance with the subpoena would be unreasonable or oppressive. The U.S. Supreme Court has instructed district judges that in analyzing a motion under Rule 17, the court should look to all the relevant circumstances in the full context. Here, that's what Judge Ilston did. Judge Ilston looked at all of the surrounding circumstances in the full context, and she decided to quash the subpoenas. She was uniquely suited to do that in that she was not only the judge supervising the grand jury. You know, her primary concern was that these documents had a foreign origin to them. Yes, and that is a crucial fact that makes Why is that so critical? I don't quite understand. Well, the documents in question are in the possession custody control prior to the grand jury subpoena. At the time of the grand jury subpoena, we're in the possession custody control of foreign entities, specifically two Toshiba entities, TMD and TET. That's a Japanese company and a Taiwanese company. The documents were there. Those companies are not in the United States. Those companies cannot be served with a grand jury subpoena. Those documents cannot be reached through a grand jury subpoena. But apparently they shipped them here to the United States. Under compulsion of the civil court. There was a request for discovery, I gather, a request for production of documents. Yes. In the civil action, there was a request for the production of documents. We opposed it. We were required to produce those documents to the plaintiffs who were in the U.S. Their counsel was in the U.S. So in response to your question and Mr. Frederick's, the answer is we were required to produce the documents in the U.S. Actually, I think I agree with Mr. Frederick's. That probably doesn't matter because even if we had been able to convince the court to allow us just to make the documents available for inspection in Japan or Taiwan, the documents obviously would have been brought to the U.S. by plaintiffs' counsel, and I think we'd be in the same place right now. So I don't think there's any fix there. But what Judge Ilsen recognized, and which is crucial here and which distinguishes every case that Mr. Frederick cited, is that the grand jury subpoena here, if it were to be enforced, would give the grand jury access to documents that it would not otherwise have had access to. In other words, because the scope of civil discovery is more far-reaching than the scope of the grand jury subpoena, the antitrust division here is trying to leverage the civil action that's ongoing at the same time as the grand jury investigation to expand the scope of proper grand jury process. And it's able to do so, and I want to make sure this is crystal clear. It's able to do so because there are treaties and other arrangements in place that allow for the service of process of a civil complaint in circumstances where a grand jury subpoena cannot be served. And this case illustrates that. The United States and Japan are both signatories to the Hague Convention on the Service of Process and Civil Actions. So it was inevitable that the foreign companies here were going to be subject to U.S. jurisdiction in the civil actions. But it's only because of that hook that the antitrust division is now able to say, aha, and as one of the judges below said, gotcha. The documents are now in the U.S., and therefore we're able to obtain access to them through the grand jury subpoena. Well, Judge Ilston was correct, and she certainly didn't abuse her discretion, in concluding that that was an unreasonable attempt to serve and enforce a grand jury subpoena. Why doesn't MISRV just control this? MISRV doesn't control this at all, Your Honor. MISRV dealt with a situation, a purely domestic situation, with a closed, settled civil action. Had no issue whatsoever of foreign documents, no issue whatsoever of a grand jury subpoena trying to get access to documents that it otherwise wouldn't get. In MISRV, the grand jury subpoena sought from, I believe, plaintiff's counsel in that case, access to documents that are otherwise available to the grand jury, but it was a mere convenience accorded to the grand jury that this court allowed that subpoena to be enforced. So there was none of this complicating factor, none of this outcome-determinative factor that I've been talking about, where there's an attempt to leverage the fortuity of an ongoing, concurrent civil action to get access to documents on the part of the grand jury. We said in MISRV that we adopted a per se rule. Yes. Basically. Yeah. That a grand jury subpoena should, as a matter of course, should, as a matter of course, prevail over protective orders. Yeah. So that's dealing expressly, dealing with the facts in front of it, which was a direct confrontation between a grand jury subpoena and a civil protective order. Well, isn't that basically what happened here? That is not basically what's happening here. What's happening here is – Well, there's a protective order that's in place, right? That's true. Right. Okay. But MISRV cannot, cannot fairly be read to say that every time a grand jury subpoena is served in a civil action with a protective order that it is thereby, by definition, reasonable and cannot be quashed. No, I mean, you could still go to – that's probably correct. You could still go to Rule 17. And that's all we're doing here. What we're doing here, we are not relying on the existence of the protective order to block. The key point you make is, though, is that these documents would – if they hadn't been brought into the United States, the grand jury never would have got them. But they're here. Well, yeah. But as Your Honor knows – well, a couple of points. Number one, I want to finish the thought on MISRV. Your Honor was on the panel of United States v. Johnson, the en banc case that addressed the effect of a panel decision by a panel of the Ninth Circuit. Yes. Right. And only where there's a decision reached necessary or there are other statements that are the result of careful analysis of relevant circumstances at binding. That does not apply here. MISRV does not control here. It's a pretty strong indication how we look at these. Well, I don't think there's any suggestion or indication whatsoever that the MISRV panel was considering a situation where the grand jury would be getting access to documents or evidence that it otherwise didn't have access to. That was not – I don't know about that. Well, that was not an issue that was being confronted by the panel in that court. And, again, in the opinion itself, there's no indication. But there's no claim that these documents are privileged in any way, is there? No. It's pretty client privilege? It's pretty client privilege. Well, I think the antitrust division is making it clear that they are not seeking privileged documents. Okay. So we don't have any privilege issues on the table? No privilege issues. But, you know, that's another situation that illustrates why MISRV can't possibly control here. MISRV certainly wouldn't mean the antitrust division can get access to attorney-client privilege documents, right? No one would argue that. Okay. Right. How about Fifth Amendment privilege issues? Well, here we're dealing with documents, corporate documents. So I don't think there's a direct Fifth Amendment privilege. I do think it's relevant that when the antitrust division first inserted itself in the civil action, and this is an important point that I want to develop, right, they were not a plaintiff or a defendant in the civil litigation, but they intervened. And they later characterized themselves as a party. They intervened to initially stay discovery, and they submitted in camera submissions to the district judge, and they played a role in the administration of discovery in the case. They secured access to review discovery and so forth. They later withdrew their objection to ongoing discovery. They were very much up to their elbows in the civil action. So this is not a case like MISRV where the grand jury was an innocent bystander just seeking information that had been produced in the civil action. Here, the antitrust division, the federal government, was very much in the discovery process in the district court. Now, getting back to a question I don't think I addressed, Judge Paez, earlier. You asked, I think, what's wrong with getting access to materials in the civil action. Well, I want to make sure I refer to the Osband case, which is cited in the papers, a Ninth Circuit panel decision postdating MISRV that stands for, that articulates and holds, in accordance with the well-established proposition from other circuits, that civil discovery should not be available as a dodge or an expansion of the limitations on criminal discovery. And as Your Honor may recall, in that case, there was a civil habeas matter going on at the same time as a civil investigation, and the court said while there was discovery of attorney-client privilege and mental health information on the civil side, that information could not be made available on the criminal side. And that goes to the core of Judge Ilston's analysis here, right? Her analysis was that it is unreasonable, to use the word in Rule 17, it is unreasonable for a grand jury subpoena to exploit the fortuity of ongoing civil discovery to expand artificially the reach of the grand jury subpoena. Well, you know, the grand jury has a special role in, you know, it has its own unique status. I have no dispute about that. It's very powerful to bring these indictments and whatnot. And it has limitations. It has some limitations. Well, it has limitations, as Your Honor identified, attorney-client privilege, Fifth Amendment privilege. And Rule 17, of course, is an enactment, right? It's an enactment of Congress by virtue of the Rules Enabling Act that says a district judge can quash a subpoena if it's unreasonable. And as this Court on Bonk, with Your Honor again ---- The role of the grand jury here, though, was, you know, was to examine alleged ---- they're looking to see if there was a criminal violation, a violation of criminal laws. And why their need for the document ---- I don't quite understand why, you know, the civil process over here basically should trump the need to pursue a criminal investigation. Whoa, whoa, no, no, no, no. We're not saying that the civil act trumps the criminal act. That's essentially what you're saying. No, no, no. What we're saying is that the ---- Where the documents originally had a foreign origin. Well, what we're saying is that the grand jury has whatever powers it has, but those should not be expanded by virtue of the existence of an ongoing civil matter, particularly where, as here, the documents in the civil action are unavailable to the grand jury otherwise. So, you know, why should a civil defendant like these Toshiba foreign entities, by complying with a civil discovery order, be there for providing information that otherwise wouldn't have to provide to the grand jury? And as I think Judge Ilsen acknowledged and as we argued, there are also international comedy issues here. When Japan and the United States signed the treaty ---- Japan has not asked that it be quashed. Well, I don't know if Japan knows. You mean to say they don't know about it? That's right. I don't know if they know about this. Bet you they know. Well, I think the record indicates, Judge Duffy, that the United States ---- and I think the United States chooses their words very carefully in their briefs, right? They said they notified Japan as to the existence of the investigation, and I think by negative pregnant there, it's an admission that they did not notify Japan of this effort, okay? Even though they were obligated to under international agreements. There's an amicus brief filed here by the National Association of Criminal Defense Lawyers, and they cite to a treaty between the United States and Japan that requires each party to notify the other as to enforcement activities relating to nationals or companies incorporated in the other state. That wasn't done here. And the reasonableness analysis under Rule 17 is certainly broad enough to include issues of comedy and such. But kind of circling back, right, to where I started, this court should not take a fresh look at this. Rule 17C is not placed before this court on its docket as a decision to be made or not. A decision has been made. A decision was made by Judge Ilston, who, as I said at the outset, was uniquely qualified by virtue of her involvement in the civil action and related criminal actions as well as this grand jury matter to assess the overall context. She issued her decision, and under this court's recent en banc decision in comprehensive drug testing, again, Judge Paez, I know you were on the panel, on the en banc panel there, that ruling by Judge Ilston is subject to an abuse of discretion review. So the sole question here is whether her analysis was so far afield that it constitutes an abuse of discretion. Well, she misapplied the law. I don't think that could be an abuse of discretion. But which law? I mean, MESERVE? Well, your whole point is that because the documents are of a foreign origin, that that has the effect of expanding the grand jury's subpoena power. Well, that is our point. That may well be a legal question that we need to look at. Well, if it is a legal question, Judge Paez, there is no guidance for this court because there is not a single case, and the government hasn't cited one, and Mr. Fredericks won't be able to cite one when he stands up in his rebuttal time, in which a federal grand jury was able to expand its reach by virtue of getting civil discovery. And it's no answer to say that in some cases they've gotten deposition transcripts or interrogatories. That's not an answer because in all of those cases, those were witnesses who were otherwise available to the grand jury who could have been subpoenaed to provide testimony directly. This case presents a truly unprecedented attempt to expand artificially the power of a federal grand jury in violation of the rights of subjects of grand jury investigations and the interests of foreign sovereigns. Thank you. Thank you. I'll try to keep this short. The Ospan decision has nothing to do with this. It doesn't involve grand juries investigating anything. It had to do with whether in a subsequent retrial the government could use attorney-client privileged information where the privilege had been waived so the guy could make out his ineffective assistance claim. I'm sorry. Keep your voice up, okay? Pardon me. You're competing with a siren. Well, I heard there's something going on today. Yes. Comity really has no place here. As you recognize, none of the foreign jurisdictions have said anything. It's hard for me to believe that they're unaware of it. White and Case was free to tell the foreign countries about the subpoena it received. Was there any obligation on the part of the United States Attorney's Office to alert Japan and Taiwan? No. These subpoenas are for the domestic subpoenas. They're for documents located in the United States. We did not notify them specifically of these subpoenas, and we think that's perfectly appropriate. A White and Case partner has talked about these subpoenas in this case in the national press. We have the citations in our brief. And the Korean International Trade Association found out about this case. If they know about it, I suspect foreign jurisdictions, if they had an interest in it, they would have been involved. The notion that the grand jury has documents that they would not otherwise have access to because of the civil discovery is not novel. The analog to the interrogatory answers in the deposition cases makes perfect sense. Cordell's interrogatory answer case, when the corporation was asked to answer the interrogatories, they complained that that would commit some sort of grave injustice because those answers could be used in a criminal investigation or criminal prosecution down the line. But they were still forced to answer them. Of course, the company had no Fifth Amendment right. It would have had to find somebody to answer those interrogatories. They would not have been available but for the civil action. Nevertheless, absent the bad faith conduct I talked about earlier, where the devices are used solely to advance the criminal investigation, the Supreme Court had no difficulty rejecting those arguments. Misserve, I think, is applicable. Misserve plainly contemplates depositions and deponents. It puts deponents on notice that the protective orders and the interests in the civil litigation are not going to The bottom line is we are not expanding the reach of the grand jury's power. We have subpoenaed persons in the United States consistent with the service rules. Those persons are subject to the jurisdiction of the court and the documents are here. If the court has no further questions, thank you. Thank you, counsel. We appreciate your arguments. This is an interesting case. The matter is submitted at this time. And that ends our session for this morning. Thank you all very much.
judges: Duffy, Noonan, Paez